UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Farm Bureau Mutual Insurance Co.
of Michigan,

       Plaintiff,

v.                          Case No. 2:20-cv-10350

Emerson Electric Co.,          Sean F. Cox
                                      United States District Court Judge

       Defendant.
_____/

**OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a product defect case. Plaintiff, Farm Bureau Mutual Insurance Company of Michigan ("Farm Bureau") initiated this action against Defendant, Emerson Electric Company ("Emerson") alleging breach of warranty claims. (ECF No. 1). The matter currently before the Court is Emerson's motion for summary judgment. (ECF No. 14). The Court GRANTS Emerson's motion because Emerson properly excluded the implied warranty of merchantability as to the thermostat at issue in this case.

**BACKGROUND**

On January 16, 2020, Farm Bureau initiated this action in Genesee County Circuit Court alleging three counts of breach of warranty: (1) Michigan Uniform Commercial Code – Breach of Implied Warranty (Count I); (2) Michigan Uniform Commercial Code – Breach of Express Warranty (Count II); and (3) Violation of Magnuson-Moss Warranty Act (Count III). (ECF No. at PageID 8-13).

1

On February 11, 2020, Emerson removed the matter to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1 at PageID 3).

On January 15, 2021, Emerson filed this motion for summary judgment arguing that Emerson is entitled to summary judgments on all counts. (Def's Br. ECF No. 14). Regarding Count I, Emerson argues: pursuant to MCL § 440.2316, Emerson properly excluded all implied warranties and is therefore entitled to summary judgment on the breach of implied warranty claim brought under the Michigan Uniform Commercial Code ("MUCC"). (Def's Br. at PageID 135). Regarding Count II, Emerson argues: privity of contract does not exist between Rhoades and Emerson; the purported failure of the thermostat occurred after the period covered by the limited warranty; and the limited warranty excludes recovery incidental or consequential damages. (Def's Br. at PageID 138). Regarding Count III, Emerson argues: Farm Bureau has no cause of action for a written or implied warranty claim. (Def's Br. at PageID 144). Finally, Emerson argues that Farm Bureau has failed to provide any evidence that the thermostat was defective. (Def's Br. at PageId 146).

With respect to summary judgment motions, this Court's practice guidelines, included in the Scheduling Order and provide, consistent with FED. R. CIV. P. 56 (c) and (e), that:

a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

2

    c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 3).

The parties complied with the Court's practice guidelines for summary judgment motions such that Defendant filed a "Statement of Material Facts Not In Dispute" ("Def's. "Stmt.") (ECF No. 15) and Plaintiff filed a "Counter-Statement of Disputed Facts" ("Pl.' s Stmt.") (ECF No. 17).

The matter arises out water damage that occurred at Barbara Rhoades ("Rhoades") home in Grand Blanc, Michigan on or about January 29, 2017.[1] (ECF No. 1 at PageID 9). Rhoades had an insurance policy through Farm Bureau, which included a provision for coverage in the event of water damage to the house and contents. (ECF No. 15-2).

Rhoades resided in Florida during the 2016-2017 winter season. (ECF No. 14-2). While she was away from her Grand Blanc home, Rhoades made arrangements for her daughter, Shelly Robinson ("Robinson") to check on her home. (ECF No. 14-3 at PageID 159). On January 29, 2017, another family member, Justin McKinney ("McKinney"), discovered water damage when he inspected Rhoades' house. (ECF No. 15-3 at PageID 193).

Farm Bureau contracted with D.M. Burr Mechanical ("D.M. Burr") to investigate why Rhoades' furnace was not functioning. (ECF No. 16-3). The investigation concluded that "the issue with the furnace was the thermostat had failed. Once D.M. Burr replaced the failed thermostat with a new thermostat the furnace could be controlled from the thermostat location." (ECF No. 16-3).

---

[1] The parties appear to agree that the water lines in Rhoades' home froze and burst causing water damage.

Rhoades subsequently submitted an insurance claim with Farm Bureau for coverage related to the water damage. Pursuant to the terms of the Insurance Policy, Farm Bureau paid $76,354.74 on the claim.[2]

The thermostat was retained by Farm Bureau and sent to Diversified Product Inspections ("DPI") for an examination. (ECF No. 14-4 at PageID 165). The DPI report authored by Sigmund Mosko ("Mosko") concluded:

> Testing of the thermostat identified that the unit does not function as designed. The unit will not activate when calling for heat, nor will it activate under the cool cycle. . . . This is not a failure due to low battery power. This would be a failure in the unit's circuit board. This would be considered a product failure.

(ECF No. 14-5 at PageID 171).

White-Rodgers is a division of the corporate entity, Emerson. (Def's Stmt. at PageID 174). The Director of Product Safety for White-Rodgers, John Schmotzer ("Schmotzer") examined and tested the thermostat and found that it was not sending a signal to the heat circuit. (ECF No. 16-7 at PageID 271). Schmotzer testified that this was not caused by low batteries and that he would not rule out a manufacturing defect or a circuit board failure (ECF No. 16-7 at PageID 272).

The thermostat was manufactured by another company for White-Rodgers, according to White-Rodgers' specifications, during the thirty-first week of 2010. (Def's Stmt. at PageID 174). The White-Rodgers Aftermarket Limited Warranty ("Limited Warranty") was in effect when the thermostat was manufactured. (Def's Stmt. at PageID 175). The Limited Warranty provided that the goods manufactured by White-Rodgers would be free of defect for a a period of 66 months

---

[2] The parties have not provided the Court with evidence of the insurance claim or the insurance payment, but the parties do appear to agree to these facts.

4

from the date of manufacture or 60 months from the date of installation, whichever came first.

(Def's Stmt. at PageID 175). Section 2 of the Limited Warranty provides:

> 2. **THIS LIMITED WARRANTY STATEMENT APPLIES TO ALL GOODS SOLD AFTER MARCH 18, 2007.**
>
> Subject to the limitations of Section 3, Seller warrants that the Goods manufactured by Seller and purchased for resale hereunder will be free from defects in material and workmanship under normal use and regular service and maintenance for a period of 66 months from date of manufacture or 60 months from date of installation, whichever comes first. Goods repaired or replaced during the warranty period shall be covered by the foregoing warranty for the remainder of the original warranty period or ninety (90) days from the date of shipment, whichever is longer.

(Def's Stmt. at PageID 175). The Limited Warranty expired in February 2016, and thus it had expired when Justin McKinney discovered the water damage on January 29, 2017. (Def's Stmt. at PageID 175). The thermostat was sold by White-Rodgers to a wholesaler pursuant to a purchase order along with an acknowledgement form, which recognized fulfillment of the purchase order. (ECF No 15-7 at PageID 215). The acknowledgement form supplied with the shipment containing the thermostat included terms and conditions and incorporated by reference the Limited Warranty. (ECF No. 15-7 at PageID 215).

The thermostat was not sold directly to Rhoades by White-Rodgers as White-Rodgers did not sell thermostats directly to consumers at retail level. (ECF No. 15-7 at PageID 215). Section 1 of the Limited Warranty contained the following language indicating that it did not extend to consumers:

> 1. **INFORMATION FOR CONSUMERS**
>
> While our warranty does not extend to you, your contractor or dealer who purchased from a wholesaler ("Buyer") is protected by a 5 year limited product warranty from White-Rodgers Division of Emerson Electric Co. ("Seller"). Goods sold hereunder

("Goods") are subject to other terms and conditions by and between any entity or person purchasing Goods from Seller.

(Def's Stmt. at PageID 176). The limited warranties set forth in Section 2 are the sole and exclusive

warranties given by White-Rodgers with respect to the thermostat:

> **THE WARRANTIES SET FORTH IN THIS SECTION ARE THE SOLE AND EXCLUSIVE WARRANTIES GIVEN BY THE SELLER WITH RESPECT TO THE GOODS AND ARE IN LIEU OF AND EXCLUDE ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ARISING BY OPERATION OF LAW OR OTHERWISE, INCLUDING WITHOUT LIMITATION, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WHETHER OR NOT THE PURPOSE OR USE HAS BEEN DISCLOSED TO SELLER IN SPECIFICATIONS, DRAWINGS OR OTHERWISE, AND WHETHER OR NOT SELLER'S GOODS ARE SPECIFICALLY DESIGNED AND/OR MANUFACTURED BY SELLER FOR BUYER'S USE OR**
> **PURPOSE.**

(Def's Stmt. at PageID 177).

Rhoades did not purchase the thermostat at a store, nor does she have any invoices or receipts for the purchase of the thermostat. (Def's Stmt. at PageID 173). Rhoades does not know when the thermostat was purchased or installed, nor does she know who installed the thermostat. (Def's Stmt. at PageID 173). Rhoades does not have the box or packaging, which contained the thermostat. (Def's Stmt. at PageID 173). Rhoades did not receive any express warranties from White-Rodgers or the company that manufactured the thermostat. (Def's Stmt. at PageID 173). Rhoades did not receive any promises or information form White-Rodgers pertaining to the operation of the thermostat. (Def's Stmt. at PageID 173). Rhoades did not have any direct dealings, conversations, or discussions with White-Rodgers, nor did she rely on anything published by White-Rodgers before the thermostat was installed in her house. (Def's Stmt. at PageID 174).

6

**STANDARD OF REVIEW**

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

Further, "[i]t is an error for the district court to resolve credibility issues against the nonmovant . . . ." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir.2008). "In effect, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true . . . ." *Id.* (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

**ANALYSIS**

Because this Court sits in diversity, the substantive law of Michigan governs the claims of in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

**Count I**

Count I of Farm Bureau's complaint alleges a breach of the implied warranty of merchantability under the Michigan Uniform Commercial Code. MCL § 440.2314. (ECF No. 1 at PageID 10). Emerson argues that the implied warranty of merchantability was excluded by

7

conspicuous language in Section 2 of the Limited Warranty pursuant to MCL § 440.2316(2). (Def's Br. at PageID 135-137).

The Michigan UCC states the implied warranty of merchantability may be excluded or modified by language that mentions merchantability and, in the case of a writing, is conspicuous. MCL § 440.2316(2). Under the Michigan UCC, conspicuous terms can include headings or language in the body of the text in capitals in equal or greater size than the surrounding text or in contrasting type, font, or color to surrounding text. MCL § 440.1201(2)(j). Section 2 of the Limited Warranty specifically states that all other warranties, express or implied, were excluded. (Def's Stmt. at PageID 177). It also specifically excludes warranties of merchantability. (Def's Stmt. at PageID 177). The language with the exclusions is in bold and in capitals greater in size than the surrounding text. (Def's Stmt. at PageID 177). Therefore, the language in Section 2 excluding the implied warranty of merchantability is conspicuous on its face.

Farm Bureau counters that the exclusion cannot be conspicuous because Rhoades never received a copy of the Limited Warranty. (Pl's Br. at PageID 239). However, this argument is unpersuasive because the Limited Warranty did not extend to consumers like Rhoades, it only protected contractors or dealers who bought the thermostat from a wholesaler. (Def's Stmt. at PageID 176). As explained above, Emerson sold the thermostat to a wholesaler. (ECF No 15-7 at PageID 215). Then presumably the wholesaler sold the thermostat to a contractor or dealer who then sold it to Rhoades.[3] The Michigan UCC defines "conspicuous" as meaning "so written, displayed, or presented that a reasonable person **against which it is to operate** ought to have noticed it." MCL § 440.1201(2)(j) (emphasis added). The exclusions in the Limited Warranty were

_____

[3] Rhoades does not remember the circumstances surrounding how she obtained the thermostat, but Emerson provided evidence that they sold it to a wholesaler. (ECF No 15-7 at PageID 215).

to operate against the contractors or dealers who purchased the thermostat at wholesale not against individual consumers such as Rhoades. Therefore, it is irrelevant whether Rhoades received the Limited Warranty because the rights it offered did not apply to her.

Even if the Limited Warranty applied to Rhoades, under Michigan law, if an indirect purchaser (such as Rhoades) "seeks to enforce the manufacturer's implied warranty, then the indirect purchaser is limited to what the manufacturer and direct purchaser negotiated." *Vanalstine v. Land O'Lakes Purina Feeds, LLC*, 326 Mich. App. 641, 651 (2018). Therefore, she would be limited by the terms of the Limited Warranty, which disclaims the implied warranty of merchantability. This alone may appear to indicate that Rhoades has no remedy for a defective product, but Rhoades' (and by extension Farm Bureau's) remedy could derive from the implied warranties that may have arisen from the subsequent sale from the dealer or contractor to Rhoades. *Heritage Resources, Inc. v. Caterpillar Financial Services Corporation*, 284 Mich. App. 617, 641 n. 15 (2009); see also *VanAlstine v. Diversified Farms, LLC*, No. 351993, 2021 WL 1711607 (Mich. Ct. App. Apr 29, 2021) ("even if [the manufacturer] had disclaimed the UCC implied warranties in its initial sale [to the distributor], new implied warranties could have arisen in the subsequent sale from [the distributor] to [the buyer]."). As Farm Bureau brought this action against Emerson – the manufacturer who properly disclaimed the implied warranty of merchantability – and not the dealer or contractor against whom it may have a viable claim, Farm Bureau's implied warranty of merchantability claim must fail.

Farm Bureau also argues that the Limited Warranty – and the conspicuous exclusion of the implied warranty of merchantability included within it – does not apply to the thermostat at issue because it only applies to White-Rodgers-branded thermostats. (Pl's Br. at PageID 240). As

reflected in Section 1 of the Limited Warranty, Emerson is the corporate entity, and White-Rodgers its division that distributes and markets thermostats. (Def's Stmt. at PageID 174). The thermostat at issue only lists Emerson on the front. (ECF No. 16-2 at PageID 252). Farm Bureau provides evidence that White-Rodgers produces a different thermostat, which exclusively has the White-Rodgers logo on the front. (Def's Br. at PageID 240). Farm Bureau implies that the Limited Warranty only applies to the thermostats with just the White-Rodgers logo and those with Emerson's logo on them. (Def's Br. at PageID 240). On the thermostat at issue, both the White-Rodgers and Emerson's logo are present in various places. The name White-Rodgers is listed on the inside of the front cover above the date code. (ECF No. 15-8, PageID 217). While Rhoades did not keep the packaging for her specific thermostat, Farm Bureau provided the Court with example packaging for the Rhoades' model of thermostat. (ECF No. 17-4 at PageID 308). The box of the example package clearly lists both White-Rodgers and Emerson, and the box also references the Limited Warranty by advertising a "5-Year Warranty." (ECF No. 17-4 at PageID 308). Due to the many locations where both brands are listed on the box, the warranty, and the thermostat itself, the Court concludes that the Limited Warranty applies to the thermostat at issue.

**Count II**

In their brief, Farm Bureau has agreed to dismiss its breach of express warranty claim (Count II).

**Count III**

In their brief, Farm Bureau has agreed to dismiss its Magnuson-Moss claim (Count III).

**CONCLUSION**

The Court GRANTS Emerson's motion for summary judgment because Emerson properly excluded the implied warranty of merchantability.

**IT IS SO ORDERED.**

Dated:  July 22, 2021                          s/Sean F. Cox
                                               Sean F. Cox
                                               U. S. District Judge